**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STATE OF DELAWARE,   :
          :  ID No. 1511001595
v.          :
          :
MARK A. BARTELL,    :
          :
    Defendant.   :

Submitted: September 13, 2023
Decided:  November 16 , 2023

## ORDER

On this 16th day of November 2023, upon consideration of Defendant Mark A. Bartell's motion for postconviction relief, the Commissioner's Report and Recommendation, Mr. Bartell's appeal, the exceptions he raises in his appeal, and the record in this case, it appears that:

1. A Kent County jury convicted Mr. Bartell of two counts of Rape Second Degree, one count of Rape Fourth Degree, and two counts of Criminal Solicitation in the First Degree on March 28, 2017. Thereafter, the Court sentenced him to an unsuspended twenty-six years of incarceration, followed by decreasing levels of probation. Mr. Bartell filed a direct appeal to the Delaware Supreme Court. The Court affirmed his convictions.[1]

2. Currently Mr. Bartell seeks postconviction relief pursuant to Superior Court Criminal Rule 61. Originally, the Court appointed postconviction counsel for

---

[1] *Bartell v. State*, 183 A.3d 1280, 2018 WL 1565636, at *4 (Del. March 29, 2018) (TABLE).

Mr. Bartell. The Court then referred the matter to a Superior Court commissioner for findings of fact and recommendations as permitted by 10 *Del. C.* § 512(b) and Superior Court Criminal Rule 62 (a)(5). Prior to briefing, Mr. Bartell terminated his relationship with his appointed counsel because of irreconcilable differences. When doing so, he elected to continue with his motion *pro se*.

4. After considering the parties' positions, the Commissioner issued her findings and recommendations in her Report attached as Exhibit A. In her Report, she examined Mr. Bartell's six grounds for relief. After a complete review of the record, the Commissioner found that Mr. Bartell's trial counsel provided competent representation and that the issues he raised caused him no concrete prejudice. She also examined his other grounds for relief and found them to be without merit, including his claims that newly discovered evidence requires the Court to grant him a new trial. Accordingly, she recommended that the Court deny Mr. Bartell's motion for postconviction relief.

5. Mr. Bartell then appealed the Commissioner's Report, and on the same day filed what he refers to as a "Motion to Present An Actual Innocence Claim." The latter filing accompanied his appeal and reiterated the same arguments he made to the Commissioner, which she rejected in her Report. Accordingly, the Court considers both filings to be Mr. Bartell's appeal and has considered the exceptions he raises in both.

6. When considering Mr. Bartell's exceptions, the Court conducts a *de novo* review to determine whether the Commissioner erred in those portions of her Report to which he objects.[2] In Mr. Bartell's combined submissions, he merely reiterates the arguments that he presented to the Commissioner.

---

[2] Del. Super. Ct. Crim. R. 62(a)(5)(iv).

2

7.     After thoroughly considering Mr. Bartell's exceptions to the Report, having presided over his trial, and having reviewed his exceptions *de novo,* the Court finds that the Commissioner correctly addressed each of his arguments.  She committed no error, and as a result, the Court adopts her Report in its entirety.

**NOW, THEREFORE**, after a *de novo* consideration of the exceptions that Mr. Bartell makes regarding the Commissioner's Report and Recommendation dated August 31, 2023:

**IT IS HEREBY ORDERED** that the Court adopts the Commissioner's Report and Recommendation attached as Exhibit A, in its entirety.  Accordingly, Mr. Bartell's motion for postconviction relief filed pursuant to Superior Court Criminal Rule 61 is  **DENIED**.

/s/ Jeffrey J Clark
Resident Judge

JJC/klc
oc:   Prothonotary
cc:   The Honorable Andrea M. Freud
        Stephen Welch, Jr., DAG
        Mark Bartell, Pro Se
        Trial Counsel

# Exhibit A

**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STATE OF DELAWARE,        :

                  :

                  :        ID No. 1511001595

                  :

v.                :        RK-15110502-01 Rape 2nd

                  :        RK-15110503-01 Rape 2nd

MARK A. BARTELL,       :        RK-15110504 01 Rape 4th

  SBI # 00201292         :        RK-16070241 01 Crim Solic 1st

                  :        RK-16070242 01 Crim Solic 1st

        Defendant.       :

**COMMISSIONER'S REPORT AND RECOMMENDATION**

**Upon Defendant's Motion for Postconviction Relief**
**Pursuant to Superior Court Criminal Rule 61**

Stephen Welch, Deputy Attorney General, Department of Justice, for the State of Delaware.

Mark Bartell, *Pro se*.

FREUD, Commissioner
August 31, 2023

The defendant, Mark Bartell ("Bartell"), was found guilty on March 28, 2017, of two counts of Rape in the Second Degree 11 *Del. C.* § 772, as lesser included offenses of Rape in the First Degree; and one count of Rape in the Fourth Degree, 11 *Del. C.* §770; and two counts of Criminal Solicitation in the First Degree, 11 *Del. C.* § 503. He was found not guilty of Terroristic Threatening and Offensive Touching. Bartell was sentenced on June 22, 2017, to seventy-six years incarceration; suspended after twenty-six years of incarceration. Followed by varying levels of probation and Bartell will have to register as a sex offender.

Bartell appealed his conviction to the Delaware Supreme Court and raised the

following grounds for relief.

> In this direct appeal, Bartell raises two claims of error. First, he asserts that the Superior Court erred when it denied his motion to sever. He claims to have suffered substantial prejudice because the State was permitted to use the criminal solicitation evidence to impugn his character and draw an improper inference as to his general criminal disposition. Second, Bartell contends that he was deprived of a fair trial when the Superior Court failed to declare a mistrial after witnesses injected inadmissible, irrelevant and prejudicial testimony about his past conduct.[3]

The Delaware Supreme Court affirmed the Superior Courts ruling. Next Bartell filed an initial Motion for Postconviction Relief pursuant to Superior Court Criminal Rule 61 on November 5, 2018, *pro se*. He also requested to have counsel appointed to represent him. The Court granted the Motion for Appointment of Counsel on November 29, 2018.

The Appointment of Counsel was referred to the Office of Conflicts counsel. On March 27, 2019, Natalie Woloshin, Esq. ("Appointed Counsel") was appointed to represent Bartell. On October 4, 2019, Appointed Counsel filed a Motion to Compel Discovery from the State, seeking potentially exculpatory information. The State objected on the basis that there is no right to discovery in a postconviction proceeding. On January 15, 2020, I ordered the State to submit to the Court unredacted copies of the information requested by Appointed Counsel so I could review the materials in-camera to see if there was any potentially exculpatory information contained in the requested documents. Following my review of the redacted and unredacted documents. I granted the motion in-part and denied it in-part on April 8, 2020. In my ruling, I ordered the State to produce unredacted copies

---

[3] *Bartell v. State*, 183 A.3d 1280, Del. Supr., Mar. 29, 2018 at pg. 2

of the police report, the fingerprint analysis, ant the other documents requested by the defense to Appointed Counsel. I also put in place a Protective Order, to the effect that Bartell could not himself have access to the unredacted copies, due to valid safety concerns for the victim and witnesses raised by the State.  Appointed Counsel then filed a motion to reconsider my ruling to Resident Judge Clark. The State filed a cross motion to reconsider, as well. On November 4, 2020, Resident Judge Clark denied both motions.

There were subsequently several requests for continuance filed by Appointed Counsel, after the redacted documents were produced by the State. Ultimately, a conflict arose between Bartell and Appointed Counsel on how to proceed with the Motion for Postconviction Relief. Bartell requested to be able to proceed *pro se*. A colloquy was held with Bartell on August 17, 2021, to determine if he knowingly wished to have appointed Counsel withdrawn and proceed *pro se*. During the colloquy, Bartell stated that due to the differences in opinion concerning the direction on the postconviction motion should take, Bartell wished to proceed, *pro se*. I thoroughly questioned Bartell and made it clear to him that if I granted his request to proceed *pro se*, that my prior Protective Order concerning Motion to Compel would not change, I other words, he would not be able to have access to the unredacted copies provided to Appointed Counsel. Bartell acknowledged that and still wished to proceed *pro se*.

There after Bartell filed several requests for continuance to file his Amended Motion for Postconviction Relief.  On March 22, 2022, Bartell filed a Motion for an Evidentiary Hearing and a Motion for Appointment of Counsel. I denied Bartell's Motion for Appointment of Counsel and asked the State to respond to the Motion for an Evidentiary Hearing. After several more continuance requests, the State filed its response on June 25, 2022. Bartell filed a reply to the State on July 11, 2022. On

July 20, 2022, I ruled that due to the fact that Bartell appeared to be raising a number of additional issues, I would allow him an opportunity to amend his postconviction motion to include the additional issues or they would not be considered. As for the request for an evidentiary hearing, I determined it would be prudent to wait until I had a complete picture of exactly what Bartell was seeking before determining if an evidentiary hearing would be necessary. Therefore, I gave Bartell until September 23, 2022, to notify the Court if he wished to proceed with his motion as it then stood or if he wished to file an amended motion to include the potential additional claims.

On August 24, 2022, Bartell wrote the Court enumerating the grounds from his July 11, 2022, letter and requesting that Deputy Attorney General Stephen Welch and I recuse ourselves from this matter. On October 20, 2022, I denied Bartell's request to recuse myself after going through the required analysis set forth in *Los* [4] and determining I was not objectively or subjectively biased against Bartell. Additionally, due to the fact that this case had gone through a multitude of filing etc., and because Bartell had not, as I requested, actually filed a complete list of his grounds for relief, I drafted a list of what, I could decipher, as his grounds for relief. A briefing schedule was put in place, which first required that Bartell notify the Court before November 1, 2022, if he had any objection to my listing of his grounds for relief, attached as Appendix A.

On October 28, 2022, Bartell informed this Court that the listing of grounds from Appendix A was correct. Subsequently, the matter proceeded with briefing. On February 21, 2023, after trial counsel and the State responded to Bartell's Motion, he requested a Stay in the proceedings due to his upcoming surgery. The request was granted. On March 7, 2023, Bartell filed his third or fourth

---

[4] *Los v. Los,* 595 A.2d 381, 383 (Del. 1991)

Motion for Appointment of Counsel which was denied on March 14, 2023. Finally, on May 26, 2023, Bartell filed his response to the State and Trial Counsel and the motion was sent to me for my consideration on June 7, 2023.

After a long strange trip, The matter is finally ripe for my review.

## FACTS

According to the Affidavit of Probable Cause, on November 3, 2015, Bartell's wife entered the Cheswold Police Department and stated that she had been raped by her husband. She stated that the assault took place between 9:00am -9:45am that day and caused her significant pain. According to the victim, she was thrown on her bed and forcibly disrobed by Bartell. The victim stated that Bartell forced his penis inside over vagina and her anus several times and eventually ejaculated inside her anus. During the rape Bartell stopped and "picked her up" by placing several of his fingers from his right hand inside her anus, picking her up and throwing her on the bed.  The victim states all of this took place without her consent. She asked Bartell to stop on multiple occasions. She attempted to escape, but Bartell would not allow her to leave the bed.  The victim stated that on November 2, 2015, at about 7:00 pm, she and Bartell were arguing over pizza and soda at which time he "flipped out" and threw the living room table across the room. Bartell then followed her into the kitchen area and tightly grabbed her around her face with both of his hands causing alarm to her. She stated that he held her face tightly and stated, "You are going to die a slow and very painful death."

The victim was taken to Kent General Hospital and a S.A.N.E. test was conducted. It was noted that the victim suffered the following injuries during the rape by Bartell: bruises on her knees and her neck, abrasions, and tears in her vaginal area, 2-centimeter hemorrhoid in her anus and other redness around her anus – all consistent with forceable sex.  The victim stated that she was bleeding from her anus

9

while using the bathroom shortly after she was raped.

Bartell was arrested on November 3, 2015. While Bartell was held awaiting trial, he attempted to solicit two prison inmates (F'chante Robertson and James Hammond) to murder the victim, in order to prevent her from testifying at trial. Bartell was reindicted on July 5, 2016, on two counts of Criminal Solicitation in the First Degree.

## BARTELL'S CONTENTIONS

In Bartell's Amended Motion for Postconviction Relief, he raises the following ground for relief:

| | |
|---|---|
| **Ground One** | **Ineffective Assistance of Counsel**.<br>**Defendant was denied his due process right to a fair trial and the effective assistance of counsel, pursuant to the 5th, 6th and 14th Amendments of the U.S. Constitution and Articles 1 § 7 and 8 of the Delaware Constitution.** |

A.) Defense counsel failed to raise an objection to the admissibility of expert witness Christina Nash and testimony of Y-STR profiling where a request for analysis under Daubert was reasonably professional by the Delaware Rules of Evidence.

B.) Defense Counsel failed to put the state's case through meaningful adversarial, testing by waving cross examination of expert witness, Christina Nash.

C.) Defense counsel failed to retain services of a "counter" expert in the field of DNA sciences for the purpose of providing a reconciling defense with regard to the 2 types on analysis used in Defendant's trial.

D.) Defense Counsel failed to move for a judgment of acquittal on the charge of rape, where testimony on Y-STR profiling was insufficient as a matter of law for proof beyond a reasonable doubt on the element of

"intercourse." The low statistical significance of the profile frequency results failed to meet the D.R.E. on admissibility of scientific testimony. Hence, Christina Nash's classification of Bode Cellmark's testing and results as a "match" were misleading, confusing to the jury and highly prejudicial to the trial proceedings.[5]

**Ground Two**  **The State, through Deputy Attorney's General, Denise Weeks-Tappan and Steven Smith, engaged in misconduct resulted in a Napue/Giglio, violation which abridged Defendant's substantial rights and rights to due process and confrontation.**

Deputy Attorney's General allowed false testimony through expert witnesses Bethany Kleiser and Christina Nash with regard to their respective testing methods and reported results on the DNA samples without a *Daubert* hearing in order to determine if the forensic testing was scientifically sound, despite contradicting evidence within the mischaracterization of the term 'excluded' irrespective to the unchallenged "match" proclamation and the extreme prejudice to the defendant as a result thereafter.[6]

**Ground Three**  **Prosecutorial misconduct by the State for *Brady* and *Jencks* violations.**

A.) The State failed to disclose, to the defense, the unredacted police report obtained by Det. Biddle during his investigation on charges of criminal solicitation.

B.) Additionally, the State failed to disclose the latent fingerprint report, unredacted or otherwise.[7]

**Ground Four**  **Ineffective Assistance of Counsel**

---

[5] Exhibit 1 - *State v. Mark Bartell*, Motion for Postconviction Relief, filed March 2, 2022, Pgs. 1-24
[6] *Id*. Pgs. 24-41
[7] *Id*. Pgs. 42-52

Defense Counsel, J'Aime Walker, erred as a matter of law when she failed to motion the Court for a mistrial after multiple violations of a Motion in *Limine* where highly prejudicial statements, deemed inadmissible, were entered into the proceedings through two state witnesses.

**Ground Five**      **4th Amendment claim as a lack of search warrant for prison calls.**

**Ground Six**      There is a lack of information that should have been preserved regarding the chain of custody on the evidence samples of buccal swabs taken from the defendant and thereafter transported to 2 different locations by Officer Simms who testifies to these events. The lack of Simm's personal notes (having claimed were destroyed) when viewed in context to the separation of key DNA samples calls into question the entire process surrounding the us of Bode CellMark in the prosecution of Bartell.

## DISCUSSION

Under Delaware Law, the Court must first determine whether Bartell has met the procedural requirements of the Superior Court Criminal Rule 61(i) before it may consider the merits of the postconviction relief claims.[8] Under Rule 61, postconviction claims for relief must be brought within one year of the conviction becoming final.[9] Bartell's Motion was filed in a timely fashion, thus the bar of Rule 61(i)(1) does not apply to this Motion. As this is Bartell's initial motion for postconviction relief, the bar of Rule 61(i)(2), which prevents consideration of any claim not previously asserted in a postconviction motion, does not apply either.

---

[8] *Bailey v. State*, 588 A.2d 1121, 1127 (Del. 1991)
[9] Super. Ct. Crim. R. 61(i)(1).

Grounds for relief not asserted in the proceedings leading to judgment of conviction are thereafter barred unless the movant demonstrates: (1) cause for relief from the procedural default; and (2) prejudice from a violation of the movant's rights.[10] The bars to relief are inapplicable to a jurisdictional challenge or to a claim that satisfies the pleading requirements of subparagraph (2)(i) or (2)(ii) of subdivision (d) of Rule 61.[11] To meet the requirements of Rule 61(d)(2), a defendant must plead with particularity that new evidence exists that creates a strong inference that the movant is actually innocent in fact of the acts underlying the charges of which he was convicted[12] or that he pleads with particularity a claim that a new rule of constitutional law, made retroactive to cases on collateral review by the United States or Delaware Supreme courts, applies to the defendant's case rendering the conviction invalid.[13] Bartell's Motion pleads neither requirement of Rule 61(d)(2).

Bartell's first and fourth grounds for relief are premised on ineffective assistance of counsel. Therefore, Bartell has alleged sufficient cause for not having asserted these grounds for relief at trial and on direct appeal. Bartell's second, third, fifth, and sixth grounds for relief are not based on ineffective assistance of counsel and he fails to give any cause for not raising them at trial or on direct appeal and consequently they should be barred by Superior Court Criminal Rule 61 (i)(3). Bartell's ineffective assistance of counsel claims are not subject to the procedural default rule in part because the Delaware Supreme Court will not generally hear such claims for the first time on direct appeal. For this reason, many defendants, including Bartell, allege ineffective assistance of counsel in order to overcome the procedural default. "However, this path creates confusion if the defendant does not understand

---

[10] Super. Ct. Crim. R. 61(i)(3).
[11] Super. Ct. Crim. R. 61(i)(5).
[12] Super. Ct. Crim. R. 61(d)(2)(i).
[13] Super. Ct. Crim. R. 61(d)(2)(ii).

that the test for ineffective assistance of counsel and the test for cause and prejudice are distinct, albeit similar, standards."[14]  The United States Supreme Court has held that:

> [i]f the procedural default is the result of ineffective assistance of counsel, the Sixth Amendment itself requires that the responsibility for the default be imputed to the State, which may not 'conduc[t] trials at which persons who face incarceration must defend themselves without adequate legal assistance;' [i]neffective assistance of counsel then is cause for a procedural default.[15]

A movant who interprets the final sentence of the quoted passage to mean that he can simply assert ineffectiveness and thereby meet the cause requirement will miss the mark.  Rather, to succeed on a claim of ineffective assistance of counsel, a movant must engage in the two-part analysis enunciated in *Strickland v. Washington*[16] and adopted by the Delaware Supreme Court in *Albury v. State*.[17]

The *Strickland* test requires the movant to show that counsel's errors were so grievous that his performance fell below an objective standard of reasonableness.[18] Second, under *Strickland*, the movant must show there is a reasonable degree of probability that, but for counsel's unprofessional effort, the outcome of the proceedings would have been different; that is, actual prejudice.[19]  In setting forth a claim of ineffective assistance of counsel, a defendant must make and substantiate concrete allegations of actual prejudice or risk summary dismissal.[20]  Generally, a claim for ineffective assistance of counsel fails unless both prongs of the test have

---

[14] *State v. Gattis*, 1995 WL 790961 (Del. Super.)
[15] *Murray v. Carrier*, 477 U.S. 478, 488 (1986).
[16] 466 U.S. 668 (1984).
[17] 551 A.2d 53, 58 (Del. 1988).
[18] *Strickland*, at 687.  See *Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996)
[19] *Outten v. State*, 720 A.2d 547, 557 (Del. 1998), citing *Boughner v. State*, 1995 WL 466465 at *1 (Del. Supr.).
[20] *Strickland*, at 687.

been established.[21]  However, the showing of prejudice is so central to this claim that the *Strickland* court stated "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."[22]  In other words, if the Court finds that there is no possibility of prejudice even if a defendant's allegations regarding counsel's representation were true, the Court may dispose of the claim on this basis alone.[23]  Furthermore, Bartell must rebut a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and this Court must eliminate from its consideration the "distorting effects of hindsight when viewing that representation."[24]

Moreover, there is a strong presumption that Trial Counsel's conduct constituted sound trial strategy.[25]  In *Harrington v. Richter,*[26] the United States Supreme Court explained the high bar that must be surmounted in establishing an ineffective assistance of counsel claim.  In *Harrington*, the United States Supreme Court explained that representation is constitutionally ineffective only if it so undermined the proper functioning of the adversarial process that the defendant was denied a fair trial.[27]  The challenger's burden on an ineffective assistance of counsel claim is to show that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  It is not enough to show that the errors had some conceivable effort on the outcome of the

---

[21] *Id*, at 697.
[22] *Id.*
[23] *State v. Gattis*, 1995 WL 790961 (Del. Super.).
[24] *Supra*, at 689; *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).
[25] *Id.*, at 668, 689.
[26] *Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)
[27] *Id*, at 791.

15

proceeding. Counsel's errors must be so serious as to deprive the defendant of a fair trial.[28]

Counsel's representation must be judged by the most deferential of standards. The United States Supreme Court cautioned that reviewing courts must be mindful of the fact that unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with his client, with opposing counsel, and with the judge. In light of this strong precedent, I have reviewed the file, considered the Trial Counsel's affidavits, and the arguments of counsel and I conclude that Bartell has failed to meet the burden imposed by *Strickland*. Trial Counsel denies Bartell's allegation. I find Trial Counsel's affidavit more compelling than Bartell's allegation. I find that Trial Counsel represented Bartell effectively. I also conclude the State acted appropriate and in no way violated any of Bartell's rights or chance for a fair trial.

Turning to each of Bartell's grounds for relief. The first claim of ineffective assistance of counsel which Bartell raises in his motion for postconviction relief is that his Trial Counsel was constitutionally ineffective because she failed to object to the testimony of DNA expert, Christina Nash, ("Nash"), who testified about the results of Y-STR DNA testing which was conducted in this case. In her affidavit which was filed on January 17, 2023, Trial Counsel states that Y-STR DNA testing is "accepted in Delaware Courts and is considered scientifically valid." A Westlaw search for case law on this issue reveals that a large number of courts across the United States have accepted the validity of Y-STR DNA testing, which uses the standard DNA testing process to seek to match "Y" chromosome DNA which is

---

[28] *Id.*

16

transmitted through a male's paternal line of ancestry.[29] In *State v. Roth*[30], after conducting a *Daubert* hearing, the Delaware Superior Court permitted Y-STR DNA testing results to be admitted into evidence, with regard to results which could be proven to have statistical relevance.

It appears that the primary difference between Y-STR testing and the more familiar DNA testing process which does not focus on the "Y" chromosome is that Y-STR testing yields lower levels of statistical certainty[31]. However, while this might preclude admissibility in some situations, Bartell did not cite any cases which hold that Y-STR DNA evidence is not admissible in circumstances comparable to those in this case.

There are a few Delaware cases dealing with very low levels of statistical probability which arguably could support Bartell's argument. In *Strickland,*[32] the Superior Court ruled that DNA evidence was not admissible when the expert would have testified that there was one-in-two chance that DNA which was found on a weapon matched that of the defendant. Likewise in *Roth,*[33] the Court declined to admit certain Y-STR DNA evidence when the expert testimony would have established that there was a 50.2% chance that the questioned DNA in a mixed sample matched that of the defendant. In Bartell's case, however, the statistical relevance of the evidence is much greater. The DNA expert testified that the profile which was developed –matched that of Bartell – did not match any of the 5,259 profiles in the U.S. STR database. She also testified that she had calculated, with 95% confidence, that the DNA profile develop in this case would match that of one

[29] *See, e.g.*, *Commonwealth v. Clark*, 34 N.E.3rd 1(Mass. 2015); *State v. Jones*, 345 P.3rd 1195 (Utah 2015); *Nebraska v. Tucker*, 920 N.W. 2d 680 (Neb.2018); *People v. Stevey*, 148 Cal. Rptr. 3d 1 (CA App. 2012).
[30] *State v Roth*, 2000 WL 970673 (Del. Super. 2000)
[31] *State v. Jones*, 345 P.3rd at pp. 1208-1209
[32] *Strickland v. State*, 2016 WL 2732248 (Del. Super. 2016)
[33] *Supra*

in every 1,757 males in the population of the United States.[34] Given this level of statistical discernment, the STR test results in this case were relevant and admissible in evidence.[35] Considering the foregoing, Trial Counsel would have had no reason to file a challenge to the admissibility of the STR DNA testing and no legal basis to do so.

Bartell's second ineffective assistance claim is that Trial Counsel failed to put the State's case through "meaningful adversarial testing" by waiving cross-examination of the DNA expert, Christina Nash, ("Nash"). In her affidavit, Trial Counsel responded, that there was no point cross-examining Nash because Bartell and the victim were a married couple who lived together, and therefore "the presence of his DNA would not be surprising or unexpected." In her closing statement, Trial Counsel suggested to the jury that the victim had "fabricated" the allegation of rape because she wanted to "continue a new relationship."[36] She argued that, by the victim's own admission, she had engaged in vaginal and anal intercourse with Bartell many times during the course of their 15-year marriage, and therefore the presence of Bartell's DNA wasn't "that big of a surprise."

The decision whether to cross-examine a witness is a tactical decision which Trial Counsel is entitled to make in pursuance of a reasonable trial strategy.[37] As long as trial counsel's decision with regard to cross-examination was reasonable, it cannot provide a basis for finding of ineffective assistance of counsel.[38]

---

[34] *State v Bartell*, 2017 WL 384314, Del.Super., Jan. 25, 2017, Trial Transcript pp. C-29-31

[35] See *Washington v. State*, 153 A.3d 76 (Table) (Del. 2016) (DNA results admissible when just one of every eleven members of the African American population would likely have a DNA profile matching that of the defendant and of DNA found on a gun)); *Roth v. State*, 2000 WL 970673 (Del. Super. 2000) evidence of DNA results from mixed samples admissible when testimony would have established a probability of 99% or grater that defendant was the donor.

[36] *Supra,* Trial Transcript p E-49

[37] *Shelton v. State*, 774 A.2d 465, 479 (Del. 2000)

[38] *Id*.

There is no reason to believe that trial Counsel would have been able to make headway with the jury by trying to challenge testimony about DNA evidence which there is no reason to doubt. Clearly, trial counsel made a tactical decision not to challenge the DNA evidence but to minimize it by arguing that there was a valid reason why Bartell's DNA would have been present in this case. Without question, this was a reasonable trial strategy.

Bartell's third ineffective assistance of counsel argument is that Trial Counsel failed to retain a 'counter' expert in the field of DNA evidence. In her affidavit, Trial Counsel concedes this fact but points out that her office retained both a SANE expert and a handwriting expert. She states that the DNA evidence in the case was reviewed by a forensic nurse who is employed by the Public Defender's Office – i.e., the evidence was in fact reviewed by someone with expertise and training in the filed of forensic evidence. While Bartell alleges that an outside expert should have been retained to testify at his trial, he has not even arguably established that there was a need for this to occur, or that such testimony would have proved to be of value to Bartell's defense. Bartell has not established that his case was prejudiced in any way by the failure to retain an outside DNA expert.

It should be noted that the SANE expert testified at trial, in effect, that the physical/medical evidence in the case was inconsistent with the victim's statements about what occurred.[39] In other words, Trial Counsel did make a serious effort, through the testimony of an expert witness, to challenge the probative value of the forensic evidence presented by the State. Retaining a SANE expert was certainly a better trial strategy than retaining an outside DNA expert to make a pointless challenge to DNA evidence.

---

[39] *State v Bartell*, 2017 WL 384314, Del.Super., Jan. 25, 2017, Trial Transcript pp. D-20-49

19

Bartell takes issue with the propriety of the State's decision to retain a second laboratory to conduct STR DNA analysis in this case. He points out that the D.F.S. analyst, Bethany Kleiser,("Kleiser") testified that Bartell was "excluded" as a contributor to the mixed samples (the rectal swabs) which she analyzed. These are the swabs from which the second laboratory (Bode Cellmark) was able to develop the STR DNA which matched that of Bartell. While there is an apparent inconsistency in these results, it should be noted that Kleiser testified that the term "excluded" can include situations in which DNA is not present or in which the "the DNA level is just too low."[40] What happened in this case is that the second laboratory, Bode Cellmark, was able to amplify the DNA which was present – making "millions of copies" – and then to obtain results with Y-STR DNA analysis.[41] Despite Bartell's claims, the State did nothing wrong by sending the DNA extracts from D.F.S. for follow-up testing at Bode Cellmark. The admission of this testimony did not mislead the jury or prejudice Bartell.

Bartell's fourth claim is that Trial Counsel represented him ineffectively because she failed to make a motion for judgement of acquittal regarding the rape charge. At various points in his written submission, Bartell complains that trial Counsel in effect "conced[ed]" that he had engaged in intercourse with the victim. At other times Bartell himself seems to concede that intercourse occurred and to argue that, for this reason, DNA testimony was unnecessary: "There was never any question as to the accused of the alleged act, so why would the State need to employ multiple experts to testify to confirm identity?"

In fact, based on the DNA evidence and the victim's testimony, there was no basis for Trial Counsel to argue that the State's evidence, when viewed in the most

---

[40] *Id*. at Trial Transcript B-128
[41] *Id*. at Trial Transcript C 25-26

favorable light, did not establish that intercourse between Bartell and the victim had occurred. There would have been no point in making a motion for judgment of acquittal regarding the rape charges.

Bartell's second ground for relief contends that the State in this case committed an act of misconduct by presenting testimony from the two DNA analysts, Kleiser and Nash. In part, for reasons previously discussed, this contention has not basis. The evidence was admissible, and the presentation of the evidence at Bartell's trial did not amount to prosecutorial misconduct. DNA evidence is routinely presented at criminal trials in Delaware. The State in this case had no reason to believe that the DNA results were false or inadmissible in evidence. Clearly this ground for relief is procedurally barred and meritless.

The third ground for relief made by Bartell alleges that the State failed to disclose certain evidence. Bartell claims that the State failed to disclose an unredacted police report obtained by Det. Biddle during his investigation. However, a redacted copy of the report was sent Bartell's Trial Counsel on December 14, 2016. This was more than three months before Bartell's trial. The report is dated November 10, 2016. Consistent with the State's policy and with the requirements of the "Victims' Bill of Rights," the report was redacted to prevent disclosure of the names and contact information of witnesses.[42] It is important to note that Delaware's discovery rules do not require the State to provide police reports to the defense.[43] In Bartell's case, the State agreed to provide *redacted* police reports in return for Bartell's agreement to waive his preliminary hearing. However, the provision of redacted reports does not create a right to disclosure of unredacted reports.[44] In

---

[42] 11 *Del.C.*§ 9403
[43] Superior Court Criminal Rule 16(a)(2)
[44] *State v. Cooke*, 2022 WL 17817903 (Del.Super. 2022)

21

addition, although the report was redacted when it was provided in discovery, there can be no doubt that, during the trial, Trial Counsel knew the identity of the person reference in the report.

Bartell also alleges that the State failed to disclose a latent fingerprint report. However, the report was provided to Trial Counsel by letter dated October 7, 2016. Once again, certain portions of the report were redacted to protect the identity of the potential witnesses. However, testimony about the fingerprints results was presented by the State at trial. Seemingly, this testimony would have benefited the defense by establishing that the fingerprints of persons other than Bartell were on the diagram of his residence which was introduced into evidence. In any event, it is unclear how the defendant was prejudiced by the manner in which the fingerprint report was disclosed and/or by the handling of the evidence at trial. As previously noted, the fingerprint results were brought out at trial. Det. Biddle also testified that a person who touches a piece of paper does not always leave a fingerprint, and that the diagram of the Bartell residence which was admitted into evidence in this case accurately depicted the layout of the home.[45] This ground for relief is both procedurally barred and meritless.

Ground four centers on Trial Counsel's failure to move for a mistrial after several violations of a *Motion in Limine* occurred. Specifically, the SANE nurse who testified for the State, stated non-specifically, that the victim told her, "this has happened before." Trial Counsel immediately objected, and with her agreement, the trial judge promptly told the jury to "disregard the last response that you heard. It has no basis in evidence in this case." [46] In Delaware, a trial judge's prompt curative instruction is presumed to correct errors and to adequately direct jurors to disregard

---

[45] *State v Bartell*, 2017 WL 384314, Del.Super., Jan. 25, 2017, Trial Transcript pp. C 92-93
[46] *Id*. at pp B 60-62

22

inadmissible evidence. Jurors are presumed to follow the Court's instructions.[47] In this case, Trial Counsel acted promptly to cure the error which occurred, and there was no manifest necessity for a mistrial.

During the testimony of Bartell's sister, Mary Davis, the State played a recording of a prison phone call between her and Bartell. During this phone call, Ms. Davis made a reference to a "PFA" which the victim had obtained; this reference had mistakenly not been redacted as previously agreed. Also, during her live testimony, in an answer which was not directly responsive to the prosecutor's question, Ms. Davis testified that "there was a protection order done." The trial judge found that these violations of the pre-trial order were inadvertent and asked Trial Counsel, who had not objected to either, of the comments, if she wanted to request a curative instruction. The judge suggested that many jurors may not even know what a PFA is. In what she expressly agreed was a strategic choice, Trial Counsel chose not to request a curative instruction, obviously not wanting to highlight what had occurred. The Delaware Supreme Court later referred to these references to protective order as "Only vaguely pointing accusatory fingers at Bartell."[48]

On direct appeal, the Supreme Court reviewed the three inappropriate references under the plain error standard and found that Bartell had not carried his burden of showing that hey had substantially prejudiced him. Despite this ruling, Bartell now recasts the issue as one of ineffective assistance of counsel. However, none of these errors was the fault of Trial Counsel. With regard to the first reference, made by the SANE nurse, she immediately objected, and the Court ordered the jury to disregard the testimony. With regard to the references to the PFA, Trial Counsel made what appeared to have been a reasonable decision not to highlight the

---

[47] *Revel v. State*, 956 A.2d 23, 27 (Del. 208)
[48] *Bartell v. State*, 183 A.3d 1280 (Table) (Del. 2018)

testimony by seeking a curative instruction. Given that the Supreme Court has already found that Bartell was not substantially prejudiced by these comments, it is clear that a mistrial was not warranted, and that Trial Counsel did not deal with these issues in a constitutionally ineffective manner.

Bartell next asserts that the State should have obtained a search warrant before listening to his prison phone calls. However, the calls in question were made on a recorded phone line. A recording which plays during each phone call informs the persons on the call that the line is recorded. For this reason, and because the call is being made by an inmate inside a correctional facility, there is a reduced expectation of privacy, and a search warrant is not needed for the State to obtain copies of the recorded calls.[49] Rather, the State can subpoena the recordings as long as it has a reasonable basis for doing so.[50] In this case, the State had a reasonable basis to subpoena the phone calls as there were allegations that the defendant was trying to make arrangements to have the victim murdered. In these circumstances, it was reasonable for the State to subpoena the recordings of the phone calls. The fact that other relevant evidence may have been developed during review of the phone calls did not render the original subpoena "a Fishing Expedition," as Bartell asserts in his legal memorandum. It should be noted, also that the phone calls did in fact reveal that Bartell wanted the victim dead, and that he wanted somebody to "take her out."[51] This ground for relief is both procedurally barred and meritless.

Bartell's sixth claim relates to an alleged failure to preserve information with regard to the chain of custody on buccal swabs which were collected from him and

---

[49] *Whitehurst v. State*, 83 A.3d 362, 366-367 (Del. 2013)
[50] *Id*.
[51] *State v Bartell*, 2017 WL 384314, Del.Super., Jan. 25, 2017, Trial Transcript pp. D 84-85

analyzed. Bartell also claims that a *Brady* violation occurred because Officer Simms from Cheswold PD failed to preserve certain notes.

Officer Simms testified that he secured a search warrant so that a buccal swab could be collected from Bartell. After Bartell was arrested, Detective. Richey of the Delaware State Police collected the swab in Officer Simms' presence. Officer Simms also testified that he took possession of the SANE kit which was collected from the victim by the SANE nurse when the victim went to the hospital. The SANE kit was stored in the evidence locker at the Cheswold Police Department after it was packaged and was later transported to the Division of Forensic Sciences ("D.F.S.") in Wilmington, along with some of the other evidence. Officer Simms testified with regard to the SANE kit, that he marked the evidence with his initials before sealing it and securing it in the evidence locker, to ensure that it would not be tampered with. Simms later testified that he picked up the evidence from D.F.S. and transported it back to Cheswold Police Department. Simms testified that he took Bartell's buccal swabs to the Bode Laboratory in the D.C. area.

The DNA analyst from the D.F.S. laboratory, Bethany Kleiser, testified about D.F.S. evidence handling procedures and said that the evidence which she examined was received at the Laboratory on November 12, 2015. Kleiser testified that the evidence which was received at the laboratory included the SANE kit, buccal sample from Bartell and a comforter from the Bartell residence. After describing the tests which were conducted on the evidence, Kleiser testified that some of the samples were sent to the Bode laboratory for further testing. She described how the samples would have been re-packaged and turned over to the police for transportation to Bode. She stated that they were stored in the D.F.S. evidence locker until she turned them over to Chris Workman, Chief of the Cheswold Police Department.

The DNA analyst from Bode Cellmark, Nash, testified that Bode's records established that Officer Louis Simms hand-delivered evidence to Bode on April 22, 2016, at 11:22 a.m. Nash testified that she recognized the signature of the Bode employee who received the evidence. The evidence was then marked with Bode identification numbers and stored in the evidence locker until she subsequently tested it. She testified that the evidence would have been checked to make sure that it was properly sealed. Nash continued to testify that the evidence received at Bode included a sample from an anal swab from the victim, a buccal swab or sample from Bartell and two "tubes of extract."[52] It was during Nash's testimony that the State moved the buccal swab from Bartell into evidence, as State's exhibit number 9, without objection from Trial Counsel. This exhibit was signed by PFC Louis Simms and establishes proper chain of command of the collected evidence.

In this case, whatever minor discrepancies or gaps might have existed in the testimony there can be no doubt that the buccal sample was collected Bartell by Det. Ritchey in the presence of Officer Simms, transported to the D.F.S. laboratory by Officer Simms, and then subsequently transported to the Bode Laboratory for further analysis. Trial Counsel did not object to the admission of this evidence because there was no reason for her to object. Any objection which she raised would have been overruled, and if need be, the State would have had the opportunity to present additional evidence clarifying or resolving any arguable issues with the chain of custody. The key point is that there is no reason to believe that the buccal swab was misidentified or tampered with.

In *Hairston*[53], the Delaware Supreme Court stated:

When the State seeks to authenticate [evidence] by establishing chain of custody, it is not required 'to produce evidence as to every

---

[52] *State v Bartell*, 2017 WL 384314, Del.Super., Jan. 25, 2017, Trial Transcript pp. C 20-22
[53] *Hairston v. State*, 249 A.3d 375, 381 (Del. 2021)

link in the chain of custody. Rather, the State must simply demonstrate an orderly process from which the trier of fact can conclude that it is improbable that the original item has been tampered with or exchanged.' This Court has ruled that, where there are inconsistencies or gaps in the testimony offered to establish the authenticity of evidence, the 'factual discrepancies, and the inferences to be drawn from them, go to the weight to be accorded the evidence rather than to its admissibility.'

Note that *Hairston* involved the admissibility of controlled substances, and thus implicated Statutes 10 *Del. C.* § 4330, *et seq.* which are not applicable to the DNA evidence in Bartell's case. Nonetheless, the general principle remains the same. The chain of custody must "eliminate possibilities of misidentification and adulteration, not absolutely, but as a matter of reasonable probability."[54] In Bartell's case, that standard was met. This ground is meritless.

With regard to Bartell's desire for an evidentiary hearing on the issue of "newly discovered evidence," Bartell's request for a new trial based on newly discovered evidence it is time-barred and because the alleged newly discovered evidence is impeachment evidence rather than substantive evidence of guilt or innocence. Additionally, it is evidence that could have been acquired prior to trial and as such is not "new." In fact, Trial Counsel hired handwriting expert, Donna Eisenberg, ("Eisenber"). Eisenberg testified that the handwriting on the contested diagram of the Bartell residence did not match the known handwriting of Bartell. The jury heard this testimony and was also informed that F'Chante Robert's and Jazzman Wilson's fingerprints were on the diagram, and that Bartell's fingerprints were not on the diagram. It is clear that Trial Counsel made considerable efforts to contest the claim that Bartell had prepared the diagram. The most effective evidence

---

[54] *Tricoche v. State*, 525 A.2d 151, 153 (Del. 1987)

27

supporting the claim, however, was certainly Det. Biddle's testimony that the diagram of the interior of the Bartell residence was accurate.[55] This supported the strong inference that the information on the diagram came from Bartell, whether or not he was the person who actually wrote the notes on the diagram. Additionally, a second inmate, James Hammond, testified at trial that Bartell also solicited him to kill the victim. Finally, the recorded prison phone calls established that Bartell stated, in his calls to his sister, that he wanted the victim dead, and he wanted her "taken out."[56] In light of all the evidence, even if the report from Mr. Baggett is deemed "newly discovered," it seems unlikely that the jury would have had reason to doubt the Bartell's guilt of the two counts of Criminal Solicitation, First Degree. Clearly any "new Evidence" Bartell now seeks to admit is merely cumulative and only gives to impeachment. Consequently, I deny his request or an evidentiary hearing.

## CONCLUSION

In conclusion I find Bartell has failed to establish that his Trial Counsel was ineffective, or that the State acted inappropriately, nor has he established the need for an evidentiary hearing. Consequently, I recommend the Court **DENY** the Motion, as meritless.

/s/ Andrea M. Freud
Commissioner

---

[55] *State v Bartell*, 2017 WL 384314, Del.Super., Jan. 25, 2017, Trial Transcript pp. C 92-93
[56] *State v Bartell*, 2017 WL 384314, Del.Super., Jan. 25, 2017, Trial Transcript pp. D 84-85